| | | | |
|---|---|---|---|
| Minute Order Form (06/97) | | | |

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 558 | **DATE** | 3/20/2001 |
| **CASE TITLE** | MICKEY GRAYSON vs. CITY OF CHICAGO | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's Motion For Summary Judgment Is Granted.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | MAR 21 2001 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | CM docketing deputy initials |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

Document Number: 62

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

| | |
|---|---|
| MICKEY GRAYSON, | ) |
| | ) |
| Plaintiff, | ) Case No. 97 C 0558 |
| | ) |
| v. | ) The Honorable John W. Darrah |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mickey Grayson ("Grayson" or "Plaintiff"), an African-American male, has filed a Second Amended Complaint against Defendant City of Chicago ("Defendant" or "City"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") for the City's failure to promote him to one of three positions. The City has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir. 1997). The movant bears the

initial burden of establishing that the record presents no genuine issue of material fact. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). Then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

The non-movant cannot succeed in creating a factual dispute solely by resting on allegations in the pleadings but must produce evidence showing there is a disputed issue for trial. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In order to withstand summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Motions for summary judgment in employment discrimination cases must be approached "with added rigor" because credibility and intent are often central issues. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 891 (7th Cir. 1995).

## FACTS

Considering the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and drawing all reasonable inferences from the evidence in Plaintiff's favor, the facts, for purposes of resolving the summary judgment motion, are as

follows.[1]

In 1995, the City of Chicago's Department of Transportation ("CDOT"), posted openings for the positions of "Foreman of Carpenters," "General Foreman of Carpenters," and "General Foreman of General Trades." (Def.'s 56.1 ¶ 1). Stan Kaderbek, the Deputy Commissioner for CDOT, asked that the department of personnel generate a referral list of all people who were eligible for the available positions. (Def.'s 56.1 ¶ 2). Kaderbeck had begun his employment with CDOT as a Deputy Commissioner in 1993, two and one-half years prior to the challenged appointments. (Def. Res. to Pl. 56.1 ¶ 31). Separate referral lists were assembled for each position. (Def.'s 56.1 ¶ 2). Interviews were then scheduled for all the people on the referral lists. (Def.'s 56.1 ¶ 3).

Plaintiff Mickey Grayson applied for the positions of "Foreman of Carpenters," "General Foreman of Carpenters," and "General Foreman of General Trades." (Def.'s 56.1 ¶ 6). At the time of the 1995 promotions, Grayson was a Subforeman of Carpenters. (Def.'s 56.1 ¶ 43). Plaintiff had been hired by the Defendant's Public Works Department in 1985 as a carpenter. (Pl.'s 56.1 ¶ 2). Grayson is an African-American and was born on October 9, 1944. (Def.'s 56.1 ¶ 12). Grayson was interviewed for the three positions by Kaderbek, Korzeniewski, and Dengler. (Def.'s 56.1 ¶ 6). Plaintiff was one of two African-Americans who interviewed for the positions. (Pl.'s 56.1 ¶ 19).

There are no differences between the duties or pay for a Subforeman of Carpenters and a Foreman of Carpenters. (Def.'s 56.1 ¶ 43). A Subforeman of Carpenters earns the same salary, the same benefits, and the same vacation time as the Foreman of Carpenters. (Def.'s 56.1 ¶ 43).

---

[1] The Court "is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Rule 56.1] statements." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000).

Stan Kaderbek, Art Korzeniewski, and Gene Dengler were present for each of the interviews. (Def.'s 56.1 ¶ 4). Prior to the interviews, these three met to develop a list of questions for the candidates during the interviews. (Def.'s 56.1 ¶ 4). Each candidate was asked the same questions. (Def.'s 56.1 ¶ 5). The interviews took place over a period of days. (Def.'s 56.1 ¶ 7). After the interviews were concluded, Kaderbek would confer with Korzeniewski and Dengler, review the comments regarding each applicant, and then complete the rating form for each candidate. (Def.'s 56.1 ¶ 8). Kaderbek did not review personnel files or interview prior supervisors before making his decisions. (Pl.'s 56.1 ¶ 21). Defendant City of Chicago retains a list of the ages of the carpenters it employs to which Kaderbek had access. (Pl.'s 56.1 ¶ 29).

Kaderbek alone made the decision as to which candidate to hire for each position. (Def.'s 56.1 ¶ 8). Kaderbek has explained the basis of his decisions as being the candidates' previous experience on an interim basis in the positions for which they were selected. (Def.'s 56.1 ¶ 13). The candidates ultimately selected for the positions received higher scores in the categories of "quality and relevance of previous job experience" and "quality and relevance of previous supervisory experience." (Def.'s 56.1 ¶ 8). However, it is undisputed that Plaintiff had worked longer for CDOT than two of the individuals selected for promotion. (Pl.'s 56.1 ¶ 5).

Mark Fornaciari, a Caucasian male born on January 1, 1958, was selected for the position of General Foreman of General Trades. (Def.'s 56.1 ¶ 9). At the time, Mark Fornaciari had served as Acting General Foreman of General Trades for more than two years. (Def.'s 56.1 ¶ 14). Fornaciari's duties in this position included: coordinating the work of twelve different trades, supervising the ordering of materials and supplies for all twelve trades, and supervising the implementation of a progressive discipline program for all of the employees in the trades. (Def.'s

-4-

56.1 ¶ 15).

Ron Biamonte, a Caucasian born on November 10, 1952, was selected for the position of General Foreman of Carpenters. (Def.'s 56.1 ¶ 10). At the time, Biamonte had served as the Acting General Foreman of Carpenters for over three years. (Def.'s 56.1 ¶ 16). Biamonte's duties in this position included: coordinating the work of 9-10 full crews of carpenters, supervising the subforemen for each of the 9-10 carpenter crews, and serving as the first level of review in the implementation of a progressive discipline program for all of the employees. (Def.'s 56.1 ¶ 16). Had Plaintiff chosen not to accept an earlier position as Inspector, he likely would have been named Acting General Foreman of Carpenters in place of Biamonte. (Def.'s 56.1 ¶ 20, Grayson Dep. at 214). The position of Inspector opened up before the position of Acting General Foreman of Carpenters, and Plaintiff chose to take this position, rather than assume the position of Acting General Foreman of Carpenters, which he would likely have been given because of his seniority. (Def.'s 56.1 ¶ 20, Grayson Dep. at 214).

Mike Brubaker, a Caucasian born on November 25, 1958, was selected for the position of Foreman of Carpenters. (Def.'s 56.1 ¶ 11). At the time, Brubaker had served as Acting Foreman of Carpenters for approximately four years. (Def.'s 56.1 ¶ 17).

No one ever told Grayson that he would be given one of the positions posted in 1995. (Def.'s 56.1 ¶ 25). Plaintiff has had limited experience with Kaderbek and has no direct knowledge of whether Kaderbek discriminates on the basis of race or age. (Def.'s 56.1 ¶ 30, 31). During the interview, Kaderbek gave no indication that age or race would be a factor in his decisions. (Def.'s 56.1 ¶ 33, 34).

## ANALYSIS

Plaintiff may prove discrimination under Title VII or the ADEA through direct evidence or indirectly through the burden-shifting mechanism of *McDonnell Douglas*.[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). In this case, Plaintiff has presented no direct evidence of discrimination. Direct evidence of intentional discrimination entails proof of acknowledgment by the Defendant of a discriminatory motive. *Troupe v. May Department Store*, 20 F.3d 821, 823 (7th Cir. 1994).

*Indirect Evidence of a Discriminatory Failure to Promote*

Plaintiff has attempted to prove indirectly that Defendant failed to promote him for discriminatory reasons. To prove a *prima facie* case of failure to promote, Plaintiff must show that: (1) he applied for a promotion; (2) he was entitled to the promotion; and (3) the individual promoted had the same or lesser qualifications. *Bragg v. Navistar International Transportation Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). If Plaintiff makes a *prima facie* case, the burden shifts to Defendant to show legitimate nondiscriminatory reasons for the non-promotion; if Defendant does that, the "employee must demonstrate that those reasons are lies." *Brill v. Lante Corporation*, 119 F.3d 1266, 1269 (7th Cir. 1997). "Moreover, if the [defendant] honestly believed in those reasons, the plaintiff loses even if the reasons are foolish or trivial or even baseless." *Id.*

Defendant contends that it is entitled to summary judgment on three grounds: (1) the decision

---

[2] Under the *McDonnell Douglas* framework, a *prima facie* case of employment discrimination creates a rebuttable presumption that employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions; if the employer satisfies that burden, Plaintiff must then show that these articulated reasons were pre-textual. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1994).

not to promote Grayson to the position of Foreman of Carpenters did not constitute an adverse employment action; (2) Grayson did not have the same qualifications as the candidates who were promoted; and (3) Defendant made its promotion decisions on a legitimate non-pretextual basis.

*Adverse Employment Action*

"Only those acts resulting in adverse employment actions are cognizable under Title VII." *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605 (7th Cir. 2001)(decided Feb. 14, 2001)(page references unavailable). Likewise, to "establish a prima facie case under the ADEA, [a plaintiff] must show ... that he suffered a materially adverse employment action." *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1994). "[A]dverse actions must be materially adverse to be actionable, meaning more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605 (7th Cir. 2001)(citation omitted).

Defendant contends that its failure to promote Plaintiff to the position of Foreman of Carpenters did not constitute an adverse employment action since the positions of Subforeman of Carpenters (which Grayson occupied at the time) and Foreman of Carpenters are substantively the same. Defendant's 56.1 statement ¶ 43 that "there are no differences between the duties or pay for Sub-foreman of Carpenters and Foreman of Carpenters," was undisputed by the Plaintiff. Furthermore, Plaintiff fails to address this argument in its response brief. Based on the facts as admitted by Plaintiff, it seems the alleged "promotion" to Foreman of Carpenters would have amounted to no more than a change in title.

Although in some instances, a "less distinguished title" might be an indication of an adverse employment action (*See Crady v. Liberty Nat. Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)), this is not the case here. Not only does the Plaintiff fail to argue it, neither party

discusses the significance of the change of title. Most importantly, the Seventh Circuit has found that a mere change in title in and of itself is not sufficient to constitute an adverse employment action. *See Crady v. Liberty Nat. Bank & Trust Co. of Indiana*, 993 F.2d 132 (7th Cir. 1993)(change in title from assistant vice-president and manager of one bank branch to loan officer position at another branch not adverse employment action). *See also Flaherty v. Gas Research Inst.*, 31 F.3d 451(7th Cir. 1994)(lateral transfer with title change and where employee would have to report to prior subordinate not adverse employment action).

Since Plaintiff has failed to show that the denial of the promotion constituted an adverse employment action, summary judgment is granted on the portion of Plaintiff's Second Amended Complaint regarding the City's failure to promote him to the position of Foreman of Carpenters.

*Similarly Situated*

Defendant has failed to meet his *prima facie* burden of showing that he and the individuals who received the promotions to General Foreman of General Trades and General Foreman of Carpenters were similarly qualified. Defendant has pointed out that the two individuals who had received the promotions had already served for a number of years in the positions sought by Plaintiff.

Plaintiff responds by citing the deposition testimony of George Reiter, Defendant's former Acting General Foreman of Carpenters, who states that Plaintiff was as qualified for the three positions as the three men who received the promotion. (Pl. Resp. at 9). However, Plaintiff does not show that he had actual experience in the sought-after positions commensurate with those who received the promotions. To the extent that Mark Fornaciari and Ron Biamonte had already served in the positions for two and three years, respectively, Plaintiff cannot be said to be similarly situated to the men who received the promotions. *See e.g., Bickerstaff v. Nordstrom*, 48 F.Supp.2d 790, 800

(Keyes, Magistrate J.). Certainly, Plaintiff has been working full-time in Defendant's employ for longer than that, but more seniority in the positions of carpenter and Subforeman does not in itself qualify Plaintiff for the General Foreman of Carpenters and General Foreman of General Trades positions. Plaintiff contends that his supervisory experience as a Subforeman meant that he was similarly qualified. However, Plaintiff fails to show how his own experiences prepared him for the desired positions' respective duties.

The General Foreman of General Trades' duties included: coordinating the work of twelve different trades, supervising the ordering of materials and supplies for all twelve trades, and supervising the implementation of a progressive discipline program for all of the employees in the trades. (Def.'s 56.1 ¶ 15). The General Foreman of Carpenter's duties included: coordinating the work of 9-10 full crews of carpenters, supervising the Subforemen for each of the 9-10 carpenter crews, and serving as the first level of review in the implementation of a progressive discipline program for all of the employees. (Def.'s 56.1 ¶ 16). Not only do these two positions involve oversight of substantially more employees, the duties of these positions appear to include managerial functions not encountered by Plaintiff in his position as Subforeman.

Plaintiff has not met his burden of showing that he was as qualified as the three individuals who received the promotions.

*Pretext*

A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). "[Pretext ... means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "If an employee

-9-

making hiring decisions honestly believes that the decisions are based on nondiscriminatory reasons, the reasons are not pretextual." *Bickerstaff v. Nordstrom*, 48 F.Supp. 790, 799 (7th Cir. 1999). "The reasons need not be compelling; they can be foolish or trivial or even baseless." *Id.* (citations omitted).

Kaderbek has explained his decisions as being based on the candidates' previous experience on an interim basis in the positions for which they were selected. (Def.'s 56.1 ¶ 13). Plaintiff has failed to show that Kaderbek did not believe his stated reason. It is undisputed that Kaderbek alone made the promotional decisions. However, Plaintiff makes a number of arguments which prove unpersuasive.

First, Plaintiff points to some alleged inconsistencies in the testimony regarding whether Korzeniewski and Dengler actually scored the candidates. (Pl. Res. 5,6). However, any inconsistencies here are irrelevant since it is undisputed that Kaderbek made the decision alone. The extent to which the other two men scored the interviews is likewise immaterial since Kaderbek has stated that he made his decisions solely on the basis of the candidates' prior experience.

Second, Plaintiff alleges that he is entitled to an inference of age discrimination based on the fact that CDOT retains a list which includes the carpenters' ages. However, Plaintiff has failed to show that Kaderbek consulted this list before making his hiring decisions. The fact that Kaderbek apparently did not consult any of the personnel files makes its appear highly unlikely the list was maintained for discriminatory purposes.

Next, Plaintiff asserts that he is entitled to an inference of discrimination based on the apparent subjectivity of Kaderbek's decisions. (Pl. Res. 11). However, here, the stated criterion for making the decisions is by no means subjective. Kaderbek has stated that they were based entirely

on one factor -- the successful candidates had already served in the positions on an interim basis. Of course, the issue is not whether the stated reason is the best grounds on which to make a decision. Indeed, the fact that Kaderbek did not review any of the candidates' personnel files would seem to indicate that his decision-making process was far from thorough. However, the fact that Kaderbek might have "taken the path of least resistance" and decided to promote those who already held the positions does not render his explanation pretextual. It is worth noting that Plaintiff fails to provide any facts which show that the interim appointments of the ultimately successful candidates was discriminatory. In fact, neither party explained the basis of these interim appointments in their Local Rule 56.1 fact statements. Furthermore, the fact that Biamonte occupied the position of General Foreman of Carpenters on an interim basis before Kaderbek even started at CDOT casts additional doubt on Plaintiff's claim of pretext.

Lastly, Plaintiff argues that the absence of some interview notes as well as the lack of detail of existing notes signals pretext. However, somewhat paradoxically, the absence of interview notes appears to actually bolster Kaderbek's stated reason. If Kaderbek intended to merely promote those who already held the positions, he obviously wouldn't be overly concerned with documenting the outcomes of the interviews.

Although Kaderbek's stated reason for making the promotion decisions may not be the best reason, Plaintiff has not succeeded in raising a material issue of fact as to whether it is pretextual. Courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Wolf v. Buss Inc.*, 77 F.3d 914, 920 (7th Cir. 1996).

Plaintiff has failed to meet his burden of showing that the stated reason for Defendant's promotional decisions is pretextual.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: 3-20-01